39450. SPRINGFIELD INSURANCE COMPANY
et al. v. FULLER.

BELL, Judge. Claimant obtained an award of workmen's compensation benefits which was affirmed by the superior court. The evidence showed that on the morning of the day of his injury claimant was driving one-inch concrete nails through a metal sleeve in concrete with a hammer; that the nails had been bending and breaking; that around 10 p.m. at home he suffered pain in his left eye which was worse the next morning; that he was taken to an ophthalmologist who removed a metallic foreign particle embedded in the corner of his left eye; that an infection was found for which, according to the

doctor's testimony, a twelve-hour incubation period would not be too long. Claimant had never had trouble prior to the accident and had worked with no other metal than the nails for some time past.

The evidence supported the award. The medical testimony that the metallic foreign body found deeply embedded in the eye produced the infection was positive in nature and coupled with the other evidence was sufficient to justify the board's award. Cf. *Lumbermen's Mut. Cas. Co. v. Bridges*, 81 Ga. App. 395, 401 (58 SE2d 849).

*Judgment affirmed. Hall, J., concurs. Felton, C. J., concurs specially.*

DECIDED JUNE 13, 1962.

*Woodruff, Latimer, Savell, Lane & Williams, John M. Williams*, for plaintiffs in error.

*Smith, Swift, Currie, McGhee & Hancock, Glover McGhee*, contra.

FELTON, Chief Judge, concurring specially. The evidence in the trial of the workmen's compensation claim of John L. Fuller was substantially as follows: On December 14, 1960, at approximately 9 a.m., the claimant began driving one-inch concrete nails through a metal sleeve into concrete with a claw hammer in the course of his employment with Delta Heating Company. He had driven between 75 and 100 of these nails when he changed over to using a ramset stud gun, because the concrete nails had been bending, breaking and chipping up the concrete, apparently due to the 20 degree F. temperature of the air at the time. He used this tool to set between 50 and 100 nails, from 11 a.m. to 4 p.m., his regular quitting time. While watching television at home that evening, he began to suffer from pain in his left eye around 10 p.m. He obtained temporary relief by putting "Murine" in the eye, but was awakened in the early morning hours by severe pain. After going to work in the morning he was taken to an ophthalmologist, who removed a metallic foreign particle which was embedded in the cornea of his left eye and commenced treatment of a pyocanus infection, the incubation period of such an infection being about 12 hours.

Although a foreign body on the surface of the eyeball usually can be felt immediately, one embedded in the tissue of the eyeball may not cause discomfort for a matter of hours or days, until a chemical reaction sets in, causing infection. The claimant had worked with no other metal than the nails for some time. He suffers from diabetes and is subject to "delayed pain reaction." The infection required the claimant's hospitalization on several occasions and resulted in virtual blindness of the eye and inability to return to work until February 20, 1961. He had never had any trouble with his left eye prior to December 14, 1960.

The award of a deputy director denying compensation was "reversed" by the full board, and the full board's award was affirmed on appeal to the superior court. The plaintiff in error excepts to the judgment of the superior court on the ground that there was not sufficient evidence to support it.

It is conceded that the claimant's right to compensation is dependent upon circumstantial evidence. It has been held many times that a plaintiff in a civil case who supports his action solely by circumstantial evidence is authorized to have a verdict in his favor when the testimony is such as to reasonably establish the theory relied upon, and to preponderate to that theory, rather than to any other reasonable hypothesis. *Georgia R. &c. Co. v. Harris,* 1 Ga. App. 714 (1) (57 SE 1076); *Travelers Ins. Co. v. Miller,* 104 Ga. App. 554, 560 (122 SE2d 268); *Collis v. Ashe,* 212 Ga. 746, 748 (95 SE2d 654). The defendant in error's right to recover is not dependent upon making inferences based upon other unauthorized inferences. *Georgia R. &c. Co. v. Harris,* supra, headnote 3: "Ordinarily it is a rule of circumstantial proof that the facts from which the main fact is to be inferred must be proved by direct evidence. An inference resting only upon an inference is not permissible." This rule has been variously distinguished and applied in subsequent decisions. This court synthesized these applications in *Lumberman's Mut. Cas. Co. v. Bridges,* 81 Ga. App. 395, 401 (58 SE2d 849) where it stated that even if there had been an inference based upon an inference, "neither inference is too remote and complies with the test of validity, having as a basis the connection of cause and

effect and the observations of human experience. . . Inferences may be based on facts whose determination is the result of other inferences, so long as the first inference is based on such evidence as to be regarded as a proved fact and the conclusion reached is not too remote." It remains, then, to examine the evidence upon which the inferences in this case are based, using the above test as a standard, to ascertain whether the inferences which must be used can be validly made, or are too remote.

The defendants in error argue that there is not sufficient evidence upon which to base the inference that the metallic foreign body entered the claimant's eyeball while he was engaged in working for defendant Delta Heating Company, and that it would be equally reasonable to infer that it entered the eye when the claimant rubbed his eye, after having left the job. There are several evidentiary facts which militate against the latter inference. The ophthalmologist who treated the claimant testified that the particle was "deeply embedded." It is very unlikely that merely rubbing the eye with his hand would have "deeply embedded" the particle, whereas there is more probability that driving the nails under the described conditions might have had this effect. The claimant testified that he did not recall having rubbed his eye. The possibility that the particle might have entered the eye under other circumstances was excluded, or at least minimized, by his testimony that he had not worked in his home workshop for about two weeks and the testimony of the vice-president and general manager of his employer, Delta Heating Company, that he knew of no other place at which the claimant could have gotten the metallic particle in his eye. Furthermore, the claimant testified that he was wearing no protective goggles or mask while driving the nails.

The defendant contends that there is no evidence to show that the infection was caused by the entry of the particle into the eyeball, rather than by germs having gotten into the eye at a time subsequent to the entry of the particle. The doctor's testimony of the approximately twelve hours incubation period of this particular type of infection would prima facie place the time of the commencement of the infection during the claimant's

working hours on December 14, 1960. The hypothesis that the infection was caused by the entry of the particle into the eyeball is borne out by his further testimony, as follows: "Q. Did you determine what this foreign particle was? A. I say it was metallic, probably iron because of the rust that was in the surrounding tissue. . . Q. Now, Doctor, did you make a diagnosis at the beginning? A. Oh, sure. The diagnosis was apparent, he had a corneal ulcer from an embedded foreign body, and infection. Q. You have not changed that diagnosis subsequent to that time? A. No—well, of course— Q. It was apparently a correct diagnosis? A. Yes. It was obvious, because the foreign body was embedded, we took that out, and we saw the infection around it and the eye was inflamed. . . Q. . . the treatment that was given—was occasioned from the secondary result of the foreign body being in the eye? A. Yes, there was a collar of infiltration around the metal-like foreign body. . ."

The fact that the claimant did not feel any pain while on the job does not indicate, in this particular case, that the injury did not occur while he was on the job, for two reasons. First, the doctor's testimony explained that "a foreign body *on* the eye will usually be felt almost immediately, but a foreign body driven *into* the eye, you may go for hours, or maybe even a day or two." (Emphasis supplied). Second, the claimant testified that because of his diabetic condition his sensitivity to pain was less than that of other people, hence even if the entry of the particle into the eye would ordinarily cause one some degree of pain, the claimant would be less likely to experience any pain.

The foregoing evidence, plus the claimant's testimony that he had had no trouble with his left eye prior to December 14, 1960, the alleged date of the accident, was a sufficient basis upon which these inferences could be made and was competent to sustain the finding that the accident arose out of and in the course of the claimant's employment and the court did not err in affirming the award of the full board granting compensation.